RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0159P (6th Cir.)
File Name: 04a0159p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

GLENN A. COOMER;
CHRISTOPHER R. STIRES;
LYNNETTE MARIE STIRES;
DIANA SPANG; PETE REEME;
KATHLEEN REEME; GARY E.
BERGER; ROY K. GERBER;
JEFFREY J. CUSTIS; MICHAEL
HOWCROFT; CONNIE BROWN
DOHERTY; WILLIAM D.
HOZMANN; RICHARD R.
BEITING; JAMES R. FAZE; LIN
A. HEINZELMAN; SCOTT
KINZER,
  *Plaintiffs-Appellants,*

  *v.*

BETHESDA HOSPITAL, INC.
and BETHESDA HOSPITAL
EMPLOYEE PENSION PLAN,
  *Defendants-Appellees.*

No. 02-3700

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 99-00883—Sandra S. Beckwith, District Judge.

Argued: December 17, 2003

Decided and Filed: June 1, 2004

Before: BATCHELDER and SUTTON, Circuit Judges;
BELL, Chief District Judge.[*]

———————————

## COUNSEL

**ARGUED:** Mark Joseph Byrne, JACOBS, KLEINMAN, SEIBEL & McNALLY, Cincinnati, Ohio, for Appellants. Daniel Jerome Buckley, VORYS, SATER, SEYMOUR & PEASE, Cincinnati, Ohio, for Appellees. **ON BRIEF:** Mark Joseph Byrne, JACOBS, KLEINMAN, SEIBEL & McNALLY, Cincinnati, Ohio, for Appellants. Daniel Jerome Buckley, Mary C. Henkel, Margaret A. Nero Fechtel, VORYS, SATER, SEYMOUR & PEASE, Cincinnati, Ohio, for Appellees.

———————————

## OPINION

———————————

   BELL, Chief District Judge. Participants in an employee pension plan have appealed the entry of summary judgment against them on their discrimination claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634. For the reasons that follow, the district court's entry of summary judgment will be affirmed.

———————————

   [*]The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

## I. BACKGROUND

Plaintiffs are 16 former employees of Defendant Bethesda Hospital, Inc. (the "Hospital"). The Hospital is the sponsor of the Bethesda Hospital Employee Pension Plan (the "Plan"), an employee pension plan governed by ERISA. Plaintiffs are all former participants[1] in the Plan who had a vested right to pension benefits under the Plan when they separated from their employment at the Hospital.

The Plan is designed to pay monthly pension benefits when participants reach their normal retirement age of 65. The Plan also allows an early retirement benefit to retired employees at age 55 which may be taken as a monthly pension or in an actuarially reduced alternative form as provided under § 4.7. Section 4.7 allows for a lump sum distribution only if the actuarial equivalent of the benefit under the Plan is less than $5,000.

In 1992 Brian Rowan, an African-American Hospital employee who was under the age of forty, sought a lump sum distribution from his pension account so that he could attend medical school. At the time of his request the actuarial equivalent of his pension account was $6,645.22. In order to accommodate Rowan's request, the Bethesda Hospital, Inc. Board ("the Board") amended the Plan to allow the lump sum distribution to Rowan. The amendment, adopted on August 11, 1992, provided as follows:

Section 4.7(f)(i) of the Plan is amended by adding the following to the end thereof:

---

[1] A Plan participant becomes a "former participant" upon separation of employment with the Hospital. Former participants have the right to receive any benefits to which they became entitled under the Plan.

In addition, Brian Rowan . . . may make the election above during 1992 notwithstanding the fact that his benefit under the Plan, determined as a lump sum actuarial equivalent, is $5,000 or more.

The Rowan distribution did not affect the benefits available to any other Plan participants.

On January 15, 1997, after learning about the distribution to Rowan, plaintiff Coomer requested a lump sum distribution of his pension benefits. At the time of his request Coomer's pension benefits had an actuarial equivalent of approximately $116,000. The Committee denied his request and advised him that he would be eligible for monthly payments of his benefit under the Plan beginning at any time after he attained age 55. Coomer appealed the Committee's decision. By letter dated April 17, 1997, James M. Connelly, Vice President and Chief Financial Officer of the Hospital, denied Coomer's second request for a lump sum settlement because the present value of Coomer's accrued benefit under the Plan exceeded $5,000. Connelly advised that "It is our underlying belief that the Plan should provide monthly retirement income to its participants and that lump sum payments should only be paid for diminimus [sic] amounts."

On October 15, 1999, Coomer and 15 other participants in the Plan filed this action in the United States District Court for the Southern District of Ohio. The first count of the amended complaint, brought on behalf of all of the plaintiffs, alleges discrimination in violation of § 510 of ERISA. The second count, brought on behalf of Coomer alone, alleges age discrimination in violation of the ADEA. Defendants filed a motion for summary judgment alleging that plaintiffs had failed to state a claim under ERISA because defendants had taken no adverse action against them and that Coomer had failed to state a claim under the ADEA for age discrimination. The district court granted the defendants'

motion for summary judgment. Plaintiffs timely filed this appeal.

## II. ANALYSIS

### A.  Standard of Review

We review a district court's grant of summary judgment *de novo. Rowan v. Lockheed Martin Energy Systems, Inc.*, 360 F.3d 544, 547 (6th Cir. 2004). Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In evaluating a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The proper inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### B.  The Non-Coomer Plaintiffs

Plaintiffs contend that the district court erred in dismissing all of the plaintiffs other than Coomer ("the non-Coomer plaintiffs") for failure to exhaust administrative remedies.[2]

Every employee benefit plan covered by ERISA is required to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133. Although ERISA is silent as to whether exhaustion of administrative remedies is a prerequisite to bringing a civil action, we have held that "[t]he administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991). "This is the law in most circuits despite the fact that ERISA does not explicitly command exhaustion." *Ravencraft v. UNUM Life Ins. Co. of Am.*, 212 F.3d 341, 343 (6th Cir. 2000). *See also Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418 n.4 (6th Cir. 1998) (citing cases that have read an exhaustion of administrative remedies requirement into the statute). The exhaustion requirement "enables plan fiduciaries to efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a

---

[2]Defendants contend that contrary to plaintiffs' assertions, the district court's decision to dismiss the non-Coomer plaintiffs was based on the lack of any adverse action that could constitute § 510 discrimination rather than on the failure to exhaust administrative remedies. It appears that the district court first determined that the non-Coomer plaintiffs failed to exhaust administrative remedies, and then proceeded to find that the 1992 Rowan Amendment to the Plan did not constitute an adverse action that interfered with the Plaintiffs' rights in violation of § 510. Although we are satisfied that the non-Coomer plaintiffs were properly dismissed for failure to exhaust their administrative remedies, we address the lack of any adverse action associated with the Rowan Amendment in Part II C below.

court in reviewing the fiduciaries' actions." *Ravencraft*, 212 F.3d at 343 (quoting *Makar v. Health Care Corp.*, 872 F.2d 80, 83 (4th Cir. 1989)).

It is undisputed that none of the non-Coomer plaintiffs requested a lump sum disbursement in excess of $5,000 from the Plan prior to filing this action. Plaintiffs contend this failure should be excused because it would have been a vain or futile act. Plaintiffs note that it is undisputed that their pension funds exceeded the $5,000 lump sum distribution limit under the Plan, and the defendants had made it clear that the Plan prohibited them from making a distribution that exceeded this amount.

Failure to exhaust administrative remedies is excused "where resorting to the plan's administrative procedure would simply be futile or the remedy inadequate." *Fallick*, 162 F.3d at 419. "The standard for adjudging the futility of resorting to the administrative remedies provided by a plan is whether a clear and positive indication of futility can be made." *Id.* A plaintiff must show that "it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision." *Id.* (quoting *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996)).

Plaintiffs in the case at bar contend that exhaustion of the administrative process should be excused in this case just as it was in *Costantino v. TRW, Inc.*, 13 F.3d 969 (6th Cir. 1994), because the Plan did not allow disbursements in excess of $5,000 and it can be inferred from the denial of Coomer's request for a lump sum distribution that the remaining plaintiffs' claims would be denied as well. In *Costantino* we held that the district court did not abuse its discretion in excusing exhaustion in light of the district court's determination that the suit was directed to the legality of the amended plan rather than to a mere interpretation of it. *Id.* at 975. Moreover, we noted that requiring further administrative

remedies would not have served any of the purposes of administrative exhaustion under the facts of that case. *Id.*

We reject the non-Coomer plaintiffs' reliance on *Costantino*. In contrast to *Costantino*, there is no clear and positive indication in this case that pursuing administrative remedies would have been a futile act. What plaintiffs sought in this action was to be treated in the same manner as Rowan. In other words, they sought an amendment to the Plan that would allow an early lump sum distribution. Under the terms of the Plan, the Hospital Board has "the right to amend the Plan at any time to any extent deemed advisable," as long as the amendment does not have the effect of decreasing any benefits accrued under the Plan before such amendment. Amendment of the Plan is a matter within the discretion of the Board.[3] Plaintiffs have not alleged any factual basis for their claim of futility other than the denial of benefits to Coomer. The plaintiffs' assertion that the Board would not have amended the Plan on behalf of any one of the 15 non-Coomer plaintiffs was not a foregone conclusion. The Hospital was never given an opportunity to determine whether the non-Coomer plaintiffs' claims were de minimis or whether they involved special circumstances that might convince the Board to amend the Plan. As the district court properly noted, the very fact that the Board amended the Plan to accommodate Rowan's request demonstrates that, in certain circumstances, requests for lump sum disbursement in excess of $5,000 would be granted. Requiring the non-Coomer plaintiffs to pursue the administrative process would accordingly serve several important purposes of administrative exhaustion, including the development of a factual record, enabling the Hospital to consider the claims

---

[3]Plaintiffs' assertion that in granting Rowan's request "the Board exceeded their authority and acted contrary to the Plan provisions," is simply incorrect. The Board had authority to amend the Plan as long as it did not affect the rights of other Plan participants.

before premature judicial intervention, and providing a nonadversarial method of claims settlement.

Because we find that the non-Coomer plaintiffs did not exhaust their administrative remedies and because they did not demonstrate clear and positive evidence of the futility of exhausting those remedies, we affirm the district court's dismissal of the non-Coomer plaintiffs.

## C. Discrimination under ERISA § 510

According to plaintiffs[4], the district court erred when it determined that defendants' failure to treat plaintiffs in the same manner they treated Brian Rowan did not violate § 510 of ERISA, 29 U.S.C. § 1140.[5]

ERISA § 510 offers protection against two types of conduct: adverse action taken because a participant availed himself of an ERISA right (an "exercise" or "retaliation" violation), and interference with the attainment of a right

---

[4]Although we have affirmed the dismissal of the non-Coomer plaintiffs, we refer to all of the plaintiffs in this section because we find that even if the non-Coomer plaintiffs had not been dismissed on procedural grounds, they nevertheless could not succeed on their § 510 ERISA discrimination claim.

[5]ERISA § 510 provides in pertinent part:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this title, section 3001 [29 USCS § 1201], or the Welfare and Pension Plans Disclosure Act, or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this title, or the Welfare and Pension Plans Disclosure Act.

29 U.S.C. § 1140.

under ERISA (an "interference" violation). *Mattei v. Mattei*, 126 F.3d 794, 797 n.4 (6th Cir. 1997) (citing *Furcini v. Equibank, NA*, 660 F. Supp. 1436, 1439 (W.D. Pa. 1987)). In this action Plaintiffs have not alleged that they suffered any adverse action because they availed themselves of an ERISA right. Plaintiffs have instead alleged an interference violation. To avoid summary judgment on a § 510 interference claim, "an employee must show that the employer engaged in prohibited conduct for the purpose of interfering with the employee's attainment of any right to which he may become entitled under an ERISA-protected plan." *Roush v. Weastec, Inc.*, 96 F.3d 840, 845 (6th Cir. 1996).

The district court determined that denial of Coomer's request for a distribution was not an "adverse action" or "prohibited conduct" as contemplated by § 510 because it did not interfere with a right to which plaintiffs were entitled. The district court also determined that amendment of the Plan to accommodate Rowan's request for a lump sum disbursement did not constitute an "adverse action" as contemplated by § 510.

Plaintiffs concede that they had no right under the Plan to a distribution because the actuarial equivalent of their benefits exceeded the $5,000 limit. Plaintiffs also concede that the Rowan amendment and the lump sum distribution to Rowan did not adversely affect their pension rights in any way. Plaintiffs contend, nevertheless, that the Rowan amendment was an "adverse action" under § 510 because it violated their right under the Plan to have the Plan administered in a non-discriminatory manner.

Plaintiffs' contention discloses a fundamental failure to distinguish between the separate functions of Plan administration and Plan sponsorship. The Plan is sponsored and funded by the Hospital. The Plan is administered by a Committee appointed by the Hospital Board. The Plan gives the Committee the full power to administer the Plan,

including the power "to interpret and construe the Plan in a non-discriminatory manner consistent with its terms and provisions." The Plan further provides that in making its determinations "the Committee shall pursue uniform policies and general rules applicable to all persons similarly situated, and shall not discriminate in favor of any person or group of persons." In creating the Plan, the Hospital Board reserved to itself the right to amend the Plan "at any time to any extent deemed advisable," as long as the amendment does not have the effect of decreasing any benefits accrued under the Plan before such amendment. The Plan's anti-discrimination provision governs the Committee's administration of the Plan. The anti-discrimination provision does not purport to govern the Board, the body authorized to amend the Plan.

Although Plaintiffs have loosely asserted that the Plan disregarded the lump sum limitation for Rowan, but denied a similar request by Coomer, the evidence of record confirms that the Committee uniformly interpreted and applied the $5,000 limitation to all who requested a lump sum distribution. The undisputed facts reveal that Rowan obtained a distribution not because the Committee disregarded the lump sum limitation when it administered the Plan, but because the Board amended the Plan specifically to permit Rowan to take a lump sum distribution in excess of $5,000.[6]

---

[6]Even if the Committee had made a distribution to Rowan without a Plan amendment and in violation of the Plan's lump sum distribution provision, we question whether the Committee would be estopped from following the lump sum distribution limitation provision in the future. A fiduciary is required to discharge his duties "in accordance with the documents and instruments governing the plan." ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D). In other words, even if there had been discrimination in the administration of the Plan, that might not have justified the equal treatment remedy Plaintiffs sought. *See McGath v. Auto-Body North Shore*, 7 F.3d 665, 670 (7th Cir. 1993) ("Because the plan must be administered according to its terms, [a participant] cannot complain because he is held to those terms; this is true even if the rules were bent for another individual.").

Amendment of the Plan was not an administrative act undertaken by the Committee, but was instead a discretionary act within the prerogative of the Hospital Board. As we noted in *Musto v. American General Corp.*, 861 F.2d 897 (6th Cir. 1988), "[t]here is a world of difference between administering a welfare plan in accordance with its terms and deciding what those terms are to be." *Id.* at 911. We agree with the district court that the Hospital's amendment of the Plan on behalf of Rowan, and its refusal to amend the Plan on behalf of Coomer, did not violate the anti-discrimination provisions of the Plan. The Rowan amendment accordingly does not constitute an adverse action or an interference with a right to which Plaintiffs were entitled under the Plan.

This brings us to the core issue presented on appeal, which is whether an employer's amendment of a Plan to accommodate one participant and its refusal to amend the Plan to accommodate another participant constitutes discrimination in violation of § 510 of ERISA, 29 U.S.C. § 1140. In *Mattei* we observed in dicta that many courts had concluded that § 510 offers no protection against an employer's actions affecting the status or scope of an ERISA plan itself and we assumed that "actions taken with respect to the plan itself are not protected by § 510." 126 F.3d at 800-01.[7] This appeal challenges that assumption. Accordingly, today we decide and make explicit that which we assumed in *Mattei*: § 510 offers no protection against an employer's actions affecting the status or scope of an ERISA plan.

We begin with an analysis of what ERISA is and is not designed to do. "ERISA was enacted to promote the interests

---

[7]In *Mattei* we held that the anti-discrimination provision of ERISA § 510 reaches further than the employment relationship and is broad enough to support a claim against an estate for interfering with a plan beneficiary's receipt of pension benefits. 126 F.3d at 804-06. *Mattei* did not involve an employer's amendment of a plan so we were not called upon to address the issue presented in this case.

of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 830 (2003) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989)). With respect to pension plans, ERISA imposes participation, funding, and vesting requirements and establishes rules concerning reporting, disclosure, and fiduciary responsibility. *Shaw v. Delta Air Lines*, 463 U.S. 85, 91 (1983) (citing 29 U.S.C. §§ 1021-1031,1051-1086, 1101-1114). ERISA does not, however, purport to govern what benefits a Plan must provide.

"Nothing in ERISA requires employers to establish employee benefits plans. Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996). "ERISA does not mandate that employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits." *Shaw*, 463 U.S. at 91.

[N]either Congress nor the courts are involved in either the decision to establish a plan or in the decision concerning which benefits a plan should provide. In particular, courts have no authority to decide which benefits employers must confer upon their employees; these are decisions which are more appropriately influenced by forces in the marketplace and, when appropriate, by federal legislation.

*Musto*, 861 F.2d at 911 (quoting *Moore v. Reynolds Metals Co. Retirement Program*, 740 F.2d 454, 456 (6th Cir. 1984)). "Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995). This rule applies equally to pension benefit plans. *Lockheed Corp.*, 517 U.S. at 890. The Supreme Court has recently reaffirmed that

"employers have large leeway to design disability and other welfare plans as they see fit." *Black & Decker*, 538 U.S. at 833.

The "large leeway" granted to employers in the design of pension plans applies equally to their modification or amendment of those plans. When an employer adopts, modifies or terminates a pension plan its actions are analogous to that of settlor of a trust rather than that of trustee or fiduciary. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443-44 (1999). Amending a plan is not an act of plan "management" or "administration," and is accordingly not subject to fiduciary review. *Lockheed Corp.*, 517 U.S. at 890 (1996).

Against this backdrop we consider the purpose of § 510. We have previously observed that the prohibitions of § 510 "were aimed primarily at preventing unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights." *Mattei*, 126 F.3d at 798 (quoting *West v. Butler*, 621 F.2d 240, 245 (6th Cir. 1980)).[8] "By its terms § 510 protects plan participants from termination motivated by an employer's desire to prevent a pension from vesting. Congress viewed this section as a crucial part of ERISA because, without it, employers would be able to circumvent the provision of promised benefits." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 143 (1990). "We have no doubt that this claim is prototypical of the kind Congress intended to cover under § 510." *Id.*

---

[8]The protections of § 510 are not limited to vested pension rights. We have clarified that § 510 "prohibits interference with rights to which an employee 'may become entitled' under 'an employee benefit plan' and does not limit its application to benefits that will become vested." *Abbott v. Pipefitters Local Union No. 522 Hosp., Medical, & Life Benefit Plan*, 94 F.3d 236, 242 (6th Cir. 1996) (quoting *Shahid v. Ford Motor Co.*, 76 F.3d 1404, 1411 (6th Cir. 1996)).

Nothing in § 510 or in the case law suggests that § 510 was designed to limit the discretion afforded employers in the creation or amendment of ERISA plans. As the Eleventh Circuit noted in *Owens v. Storehouse, Inc.*, 984 F.2d 394 (11th Cir. 1993), "section 510 targets discriminatory conduct designed to interfere with the exercise or attainment of vested or other rights under the plan or ERISA. 29 U.S.C. § 1140. It does not broadly forbid all forms of discrimination." *Id.* at 398. "Thus, to prevail under section 510, a plaintiff must show that the alleged discrimination was designed either to retaliate for the exercise of a right or to interfere with the attainment of an entitled right. It is insufficient merely to allege discrimination in the apportionment of benefits under the terms of the plan." *Id.* (citing *Shaw*, 463 U.S. at 91). In fact, a number of courts have held, under facts more compelling than those presented here, that unequal treatment in the design of the plan does not give right to an action under ERISA § 510.

In *McGath v. Auto-Body North Shore*, 7 F.3d 665 (7th Cir. 1993), the plaintiff alleged that his employer intended to interfere with his pension rights by amending the plan to exclude him and by bending the plan's eligibility requirements to permit other employees entry, while he was held to the exacting letter of the plan's terms. *Id.* at 669. Although McGath had not been fired, suspended, or disciplined by his employer, he contended that he was nevertheless the victim of a subtle form of discrimination in violation of § 510. The Seventh Circuit held that even if it assumed the truth of these allegations, § 510 did not provide McGath any relief. *Id.* at 668-70. "Because the employer, as the settlor of the plan, had the right to change the plan's terms, Mr. McGath cannot claim that the alleged discriminatory injury flows from the plan amendments." *Id.* at 670. Neither could he state a claim under § 510 by showing that others were treated more favorably:

Because the plan must be administered according to its terms, he cannot complain because he is held to those terms; this is true even if the rules were bent for another individual. ERISA § 510 affords protection from discrimination that interferes "with the attainment of any right to which such participant may become entitled under the plan." Mr. McGath does not have a *right* to treatment that is contrary to the terms of the plan, even if those terms are breached for others.

*Id.* (footnote omitted).

Similarly, in *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan*, 24 F.3d 1491 (3rd Cir. 1994), Haberern alleged that the employer's amendment to the plan that eliminated life insurance benefits for individuals over age 56, a change which affected only him, and the simultaneous tripling of the face amount of the life insurance policies for two other employees, violated § 510 of ERISA. *Id.* at 1502. The Third Circuit disagreed, instead agreeing with the employer that this action did not violate § 510 of ERISA because although § 510 "prohibits discrimination against a plan participant for the purpose of interfering with the attainment of plan rights, it does not prohibit plan amendments which affect only one person." 24 F.3d at 1502. *But see Aronson v. Servus Rubber, Division of Chromalloy*, 730 F.2d 12, 16 (1st Cir. 1984) (noting in dicta the possibility that a plan could be discriminatorily modified, intentionally benefitting, or injuring, certain identified employees or a certain group of employees).

We hold that § 510's prohibition against discrimination does not limit a plan sponsor's ability to design or amend a plan in any way it sees fit, so long as the sponsor does not reduce the participants' vested benefits. A plan sponsor's amendment of a plan to benefit one individual and its refusal to amend the plan to benefit another individual are not the kinds of discrimination prohibited by § 510. Plaintiffs had no

right under the Plan to have the Plan amended on their behalf. Because the Hospital did not interfere with plaintiffs' attainment of any of their rights under the Plan, we are satisfied that the Hospital's amendment of the Plan did not violate § 510 of ERISA.

Accordingly, we affirm the district court's entry of summary judgment in favor of the Plan and the Hospital on Plaintiffs' ERISA § 510 discrimination claim.

## D.  Age Discrimination under the ADEA

According to Coomer, the district court erred in entering summary judgment on his ADEA claim because, contrary to the district court's determinations, there were issues of fact as to whether he made out a prima facie case of age discrimination and whether the articulated reason for not making the requested lump sum to Coomer was pretextual.

It is unlawful under the ADEA for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a claim under the ADEA a plaintiff may either produce direct evidence of age discrimination, or rely upon circumstantial evidence that would permit an inference of discrimination under the burden-shifting method outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248 (1981). *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 459 (6th Cir. 2004); *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348-49 (6th Cir. 1997).

To establish a prima facie case of age discrimination under the ADEA, a plaintiff must come forward with evidence that: (1) he was at least 40 years old at the time of the alleged discrimination; (2) he was subjected to an adverse

employment action; (3) he was otherwise qualified for the position; and (4) after he was rejected, a substantially younger applicant was selected. *Burzynski v. Cohen*, 264 F.3d 611, 622 (6th Cir. 2001) (citing *Barnett v. Dep't of Veterans Affairs*, 153 F.3d 338, 341 (6th Cir. 1998)). The fourth element may be satisfied "by showing that similarly situated non-protected employees were treated more favorably." *Talley v. Bravo Pitino Rest.*, 61 F.3d 1241, 1246 (6th Cir. 1995). If the plaintiff successfully establishes a prima facie case, the burden of production shifts to the defendant to articulate a non-discriminatory reason for its adverse employment action. *Burzynski*, 264 F.3d at 622. "If the defendant comes up with such a reason, the plaintiff must then demonstrate by a preponderance of the evidence that the defendant's proffered reason was a pretext for age discrimination." *Id.*

The district court held that defendants were entitled to summary judgment on Coomer's ADEA claim because Coomer was not similarly situated to Rowan and because Coomer could not show that the Hospital's proffered reason for treating Coomer differently was pretextual. Because we find that Coomer failed to produce any evidence that would suggest that the reason for the disparate treatment was pretextual, we will not address the issue of whether Coomer made out a prima facie case of age discrimination.

In *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078 (6th Cir. 1994), we explained what evidence a plaintiff must adduce in order to show that an employer's alleged legitimate reason for its adverse action against the plaintiff was a mere pretext:

To make a submissible case on the credibility of his employer's explanation, the plaintiff is required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the

proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge.

*Id.* at 1084. *See also Hedrick*, 355 F.3d at 460. Summary judgment is appropriate when the plaintiff fails to produce evidence from which a jury could reasonably conclude that the employer's reasons were pretextual. *Wixson v. Dowagiac Nursing Home*, 87 F.3d 164, 171 (6th Cir. 1996).

The Hospital produced evidence that it amended the Plan to allow a lump sum distribution to Rowan because the amount above the allowable lump sum was *de minimis*, and because they supported Rowan's use of the funds. The Hospital explained that it placed a cap on the lump sum settlement under the Plan because it was concerned that if an employee took a large lump sum distribution, that employee might spend the monies and still look to the Hospital for long-term retirement benefits. Rowan's lump sum settlement was not for a large amount and did not raise those concerns. In addition, the Hospital explained that its decision to amend the Plan in favor of Rowan was influenced by the fact that Rowan was an African-American and he planned to use the lump sum distribution to complete his medical education to become an orthopedic surgeon. The Hospital noted that there was a shortage of African-American orthopedic surgeons, and the Hospital hoped that Rowan would eventually return to the Hospital to practice medicine. By contrast, Coomer's pension had an actuarial equivalent of approximately $116,000, a far larger amount than Rowan's, and Coomer did not advise the Hospital of any special circumstances to support his request.

The factors cited by the Hospital were reasonable factors for differentiating between Rowan and Coomer in the amendment of the plan. Coomer failed to come forward with any evidence to suggest that the reasons given by the Hospital for failing to treat Coomer and Rowan in the same manner were false, that they did not actually motivate the Hospital to treat them differently, or that they were insufficient to

motivate the Hospital to treat Rowan and Coomer differently. There is insufficient evidence on this record to enable a reasonable jury to infer that the different treatment was due to Coomer's age rather than to the size of his pension or his failure to articulate a special need for the distribution. The district court did not err in granting summary judgment in favor of the defendants on Coomer's ADEA claim.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the district court's grant of summary judgment in favor of Bethesda Hospital, Inc. and the Bethesda Hospital Employee Pension Plan.