RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0256p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ROGER L. SMITH,

　　　　　　　　*Plaintiff-Appellant,*

　　　*v.*

AEGON COMPANIES PENSION PLAN,

　　　　　　　　*Defendant-Appellee.*

No. 13-5492

> Appeal from the United States District Court
> for the Western District of Kentucky at Louisville.
> No. 3:12-cv-00697—John G. Heyburn, District Judge.

Argued: January 24, 2014

Decided and Filed: October 14, 2014

Before: SILER, BATCHELDER, and CLAY, Circuit Judges.

---

### COUNSEL

**ARGUED:** Stacey E. Elias, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amicus Curiae. Michael D. Grabhorn, GRABHORN LAW OFFICE, PLLC, Louisville, Kentucky, for Appellant. David R. Levin, DRINKER BIDDLE & REATH LLP, Washington, D.C., for Appellee. **ON BRIEF:** Michael D. Grabhorn, GRABHORN LAW OFFICE, PLLC, Louisville, Kentucky, for Appellant. David R. Levin, DRINKER BIDDLE & REATH LLP, Washington, D.C., Michael D. Risley, STITES & HARBISON PLLC, Louisville, Kentucky, for Appellee. Stacey E. Elias, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amicus Curiae.

　　　　BATCHELDER, J., delivered the opinion of the court, in which SILER, J., joined. CLAY, J. (pp. 15–17), delivered a separate dissenting opinion.

1

_____

**OPINION**

_____

ALICE M. BATCHELDER, Circuit Judge.   Appellant Roger Smith appeals the district court's dismissal of his claims without prejudice because of improper venue.   The district court held that the venue selection clause in the Employee Retirement Income Security Act ("ERISA")-governed AEGON Pension Plan requiring that suit be brought in federal court in Cedar Rapids, Iowa, was enforceable and applied to Smith's claims.   Accordingly, the court dismissed his complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).   We AFFIRM.

I.

Prior to his retirement in 2000, Smith was an employee of Commonwealth General Corporation ("CGC").   When CGC agreed to merge with AEGON USA, Inc. ("AEGON"), CGC offered some employees, including Smith, enhanced compensation if they would remain with CGC until its merger with AEGON was completed.   The offer's terms were reflected in the Voluntary Employee Retention and Retirement Program ("VERRP"), which the CGC Board of Directors ("Board") adopted and approved on October 10, 1997.

The VERRP provided that Smith would retire on March 1, 2000.   Smith elected to receive $1,066.54 under the qualified plan, and $1,122.97 under the non-qualified plan, for a total of $2,189.51 per month.[1]   The document through which Smith selected this election was titled "AEGON USA Pension Plan: Election for Distribution and Explanation of Benefits," and an attached letter informed Smith that "[i]f you elect to participate in the Voluntary Employee Retention & Retirement Program ('VERRP'), you will be entitled to receive additional benefits from the Commonwealth General Corporation Retirement Plan under that program."   VERRP Attachment A stated that Smith was entitled to a $154,976.12 benefit under the CGC Change in Control Plan.   Attachment B stated, "As a participant in the [VERRP], you are entitled to receive

_____

[1]Neither the VERRP booklet nor the AEGON Companies Pension Plan booklet explains the difference between qualified and non-qualified benefits.

a supplemental benefit either as a lump sum or in the same annuity form that your regular retirement benefit will be paid."

On February 1, 2000, Smith received a booklet from the AEGON Insurance Group with information on the CGC Retirement Plan and the VERRP, as well as a notice that, effective January 1, 2000, the CGC Plan and the AEGON Companies Pension Plan ("Plan") had been integrated pursuant to the merger. The Plan defines "CGC VERRP Participant" as "a CGC Grandfathered Participant . . . who was also a participant in the [VERRP] . . . which was an early retirement program in effect in the CGC Plan from September 8, 1997 until December 31, 1999 and in effect in this Plan from January 1, 2000 until February 29, 2000, as a result of the merger of the CGC Plan with this Plan . . . ."

Smith retired on March 1, 2000, and the Plan paid him both a lump sum benefit and $2,189.51 per month. In 2007, the AEGON Board of Directors amended the Plan to add a "venue provision."[2] The provision states: "<u>Restriction on Venue</u>. A participant or Beneficiary shall only bring an action in connection with the Plan in Federal District Court in Cedar Rapids, Iowa." In August 2011, the Plan told Smith that they had been overpaying him by $1,122.97 per month, or the amount of the benefit categorized as "non-qualified" under the VERRP, for the previous eleven years. The Plan reduced, and then eliminated, Smith's entire monthly benefit payments, stating that it would continue to do so until it had recouped the overpayment or Smith remitted to the Plan $153,283.25.

Smith exhausted the administrative remedies provided by the Plan by appealing to the AEGON Pension Committee. In that appeal Smith complained that the Plan had refused "to produce all relevant documents and information in accordance with the Plan terms and the applicable laws and regulations," and cited a number of "ERISA claims regulations." Further, he argued that "[t]he VERRP specifically provided enhanced benefits under the Plan, payable either as a lump sum or in this case in an increased monthly annuity of $1,079.48 per month. The VERRP also entered the date on which Mr. Smith could commence receiving his Plan benefits (including the VERRP enhancement)." The Pension Committee denied Smith's appeal, and Smith filed suit against CGC in Jefferson County Circuit Court, asserting claims for breach of

---

[2]Litigants and the district court refer to this provision as a "forum selection clause."

contract, wage and hour state statutory violations, estoppel, and breach of the duty of good faith and fair dealing.  CGC removed the action to the U.S. District Court for the Western District of Kentucky, and filed a Rule 12(b)(6) motion to dismiss.

The district court granted CGC's motion and dismissed Smith's complaint under Rule 12(b)(6) for failure to state a claim.  The court found that the VERRP was regulated by ERISA, and that Smith was suing to recover benefits under this ERISA plan.  The court concluded that because the Pension Committee controlled and administered the Plan, only the Pension Committee—not CGC—was a proper party defendant.  We affirmed.  *See Smith v. Commonwealth General Corp.*, No. 12-6284 (6th Cir. Oct. 9, 2014) (*Smith I*).  After the district court dismissed the *Smith I* complaint, Smith filed suit against the AEGON Companies Pension Plan in the U.S. District Court for the Western District of Kentucky.  The district court dismissed Smith's complaint without prejudice under Rule 12(b)(6) because of the Plan's venue selection clause, and Smith appealed.

II.

A.

We are required at the outset to determine the level of deference to be afforded the Secretary of Labor's ("Secretary") position, expressed in an amicus brief, that venue selection clauses are incompatible with ERISA.[3]  The Secretary's interpretation of ERISA appears in the Secretary's amicus brief in this case, and in one prior amicus brief.  *See* Brief of the Secretary of Labor as Amicus Curiae Supporting Appellant, *Mozingo v. Trend Personnel Services*, 504 F. App'x 753 (10th Cir. 2012) (No. 11-3284), 2012 WL 1966227.  Smith contends that "[t]he DOL's position is entitled to *Chevron*, or at the very least *Skidmore*, deference."

The Supreme Court has yet to address the appropriate level of deference to give the construction of a statute articulated by an agency *only* in amicus briefs.  *See* Bradley George Hubbard, Comment, *Deference to Agency Statutory Interpretations First Advanced in Litigation? The* Chevron *Two-Step and the* Skidmore *Shuffle*, 80 U. Chi. L. Rev. 447, 459

---

[3]The Secretary does not request deference, but Smith asks that we defer to the Secretary's construction of ERISA.

(2013).  Although our Court has provided no answer either, some of our sister circuits have concluded that agency positions expressed in amicus briefs deserve *Skidmore* deference.[4]  We decline to afford either *Chevron* or *Skidmore* deference to the Secretary's "regulation by amicus"[5] in this case.

The Secretary's interpretation is not entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).  The Court in *United States v. Mead Corp.*, 533 U.S. 218, 221 (2001), made it clear that *Chevron*'s two-step procedure for determining when controlling weight should be given an agency's construction of a statute is triggered only when an agency is acting with the force of law.  In our case, the Secretary's interpretation of ERISA is not entitled to *Chevron* deference because the interpretation was not made with the force of law.  *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212 (1988) ("We have never applied the principle of [*Chevron*] to agency litigating positions that are wholly unsupported by regulations, rulings, or administrative practice."); *Rosales-Garcia v. Holland*, 322 F.3d 386, 403 n.22 (6th Cir. 2003) ("An interpretation contained in a brief—like interpretations contained in opinion letters, policy statements, agency manuals, and enforcement guidelines—lacks the force of law and is therefore not entitled to *Chevron* deference.").

Whether the Secretary's amicus interpretations of 29 U.S.C. §§ 1001(b), 1132(e)(2), and 1104(a)(1)(D) are entitled to *Skidmore* deference is a more difficult question.  Despite their factual dissimilarity to our case, cases from both the Supreme Court and our Court have featured deference to amicus briefs.  *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), required the Supreme Court to determine whether the time spent within a certain proximity of the Swift plant by fire-response employees was compensable overtime under the Fair Labor Standards Act ("FLSA").  The Department of Labor ("DOL") had outlined factors to determine compensable work time through informal rulings and an interpretive bulletin.  *Id.* at 138–39.  The DOL then applied its guidelines to the specific facts in *Skidmore* in an amicus brief.  The Court held that these informal positions

---

[4] *See, e.g., Ball v. Memphis Bar-B-Q Co.*, 228 F.3d 360, 365 (4th Cir. 2000); *Serricchio v. Wachovia Securities LLC*, 658 F.3d 169, 178 (2d Cir. 2011).

[5] The Secretary of Labor has been particularly aggressive in "attempt[ing] to mold statutory interpretation and establish policy by filing 'friend of the court' briefs in private litigation."  Deborah Thompson Eisenberg, *Regulation by* Amicus*: The Department of Labor's Policy Making in the Courts*, 65 Fla. L. Rev. 1223, 1223 (2013).

constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Skidmore*, 323 U.S. at 140. *Mead*, 533 U.S. at 228, added other contextual factors for courts to consider in conducting the *Skidmore* inquiry: "The fair measure of deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position." (citations omitted).

In *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325 (2011), the Court also gave "a degree of weight to [the DOL's] views about the meaning of" the word "filed," and whether oral complaints were covered by the FLSA's anti-retaliation protections. *Id*. at 1335. The Court held that *Skidmore* governed because the DOL's interpretation had been held consistently for close to fifty years, evidenced by enforcement actions, amicus briefs, agency practice, and Equal Employment Opportunity Commission guidelines. *See id.* The Court held that the agencies' views "add force to our conclusion" under *Skidmore* because "[t]he length of time the agencies have held them suggests that they reflect careful consideration . . . ." *Id.*; *see also Christopher v. SmithKline Beecham Corp.*, 635 F.3d 383, 400 (9th Cir. 2011), *aff'd*, 132 S. Ct. 2156 (2012) ("[W]e cannot accord even minimal *Skidmore* deference to the position expressed in the *amicus* brief. . . . The about-face regulation, expressed only in ad hoc *amicus* filings, is not enough to overcome decades of DOL nonfeasance and the consistent message to employers [to the contrary] . . . .").

Two Sixth Circuit cases are also relevant. In *OfficeMax, Inc. v. United States*, 428 F.3d 583, 584 (6th Cir. 2005), the government asked this Court to defer to its interpretation of "toll telephone service," which Congress subjected to a federal excise tax. One of the government's interpretations was "not yet embraced by any administrative ruling" and was expressed solely in the government's merits brief. *See id.* at 596. We held that "*Skidmore* deference does not apply to a line of reasoning that an agency could have, but has not yet, adopted." *Id.* at 598.

In *Rosales-Garcia*, 322 F.3d at 403 n.22, we noted in passing that the Immigration and Naturalization Service's interpretation, "contained in a brief," of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, was "entitled to respect pursuant to" *Skidmore*. But because "the government's position has been inconsistent" and was advocated only during the litigation, we held that the interpretation was "unpersuasive," and instead adopted our own reading of the statute. *See id.* Thus, *Skidmore* informed the outcome of neither case.

An analysis of the contextual factors discussed by *Skidmore* and its progeny convinces us that the Secretary's position in this case is not entitled to *Skidmore* deference. First, we defer to agencies under *Skidmore* because of their relative expertise. *See Mead*, 533 U.S. at 228. *Skidmore* directs that we consider "the thoroughness evident in [the agency's] consideration." *Skidmore*, 323 U.S. at 140. But the Secretary is no more expert than this Court is in determining whether a statute proscribes venue selection. Even were the Secretary more expert, the Secretary's bare textual analysis of ERISA, without more, does not "constitute a body of experience and informed judgment to which courts" should defer. *Id.*; *see also Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1315–16 (10th Cir. 2005) ("In this case, the EEOC simply asserts its position in an amicus brief. . . . The EEOC's brief provides no indication of whether the agency has been thorough in its consideration of the issue, and it appears that the agency's position has not been subjected to any sort of public scrutiny.").

Second, the Secretary's interpretation of ERISA has been expressed only once previously, in one other circuit-court amicus brief. The Secretary had taken no position, even an informal one, against the enforceability of venue or forum selection clauses under ERISA for the thirty-nine years prior to these two amicus positions. The Secretary's new interpretation is not consistent with prior acquiescence, *see Mead*, 533 U.S. at 228; is an "about-face," *see SmithKline Beecham Corp.*, 635 F.3d at 400; and lacks longevity, suggesting the interpretation does not "reflect careful consideration," *see Kasten*, 131 S. Ct. at 1335.

Third, unlike *Skidmore* and *Kasten*, the only indication here that the agency has adopted this particular interpretation of ERISA is the amicus briefs themselves. The *Skidmore* amicus brief pointed the Court to an interpretive bulletin, *see* 323 U.S. at 138–39, and the amicus brief at issue in *Kasten* cited fifty years of enforcement proceedings and agency practice, *see* 131 S. Ct.

at 1335. But the amicus brief in this case can only be characterized as, to borrow a phrase from Justice Frankfurter, an expression of a mood. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951). An agency's mood is not entitled to *Skidmore* deference. There has never been an enforcement action brought related to a venue selection clause, and only one other amicus brief exists that has articulated the Secretary's current position. The Secretary has promulgated no regulation or interpretive guidance related to venue selection clauses. As we have noted, "*Skidmore* deference does not apply to a line of reasoning that an agency could have, but has not yet, adopted." *OfficeMax, Inc.*, 428 F.3d at 598.

## B.

The level of deference to be afforded the Secretary's interpretation does not determine the outcome of this case because, even were we to give the Secretary's interpretation heightened deference under *Skidmore*, ERISA and our precedent do not support adopting the Secretary's position. *See Rosales-Garcia*, 322 F.3d at 403 n.22 (concluding that "although the government's position is entitled to respect pursuant to *Skidmore*," the government's interpretation was unpersuasive). Because, as we explain below, we conclude that the venue selection clause is enforceable and applies to Smith's claims, we do not opine whether 29 U.S.C. § 1132(e)(2) permits venue in the U.S. District Court for the Western District of Kentucky.

## III.

We review de novo the enforceability of a forum selection clause. *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 826 (6th Cir. 2009). Smith, as the party opposing enforcement of the forum selection clause, "bears the burden of showing that the clause should not be enforced." *Id.* at 828.

ERISA's "statutory scheme . . . is built around reliance on the face of written plan documents." *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1548 (2013) (internal quotation marks omitted); *see also* 29 U.S.C. § 1102(a)(1) ("Every employee benefit plan shall be established and maintained pursuant to a written instrument."). Plan administrators and employers "are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans. This rule applies equally to pension benefit plans." *Coomer v.*

*Bethesda Hosp., Inc.*, 370 F.3d 499, 508 (6th Cir. 2004) (internal quotation marks and citation omitted). "The 'large leeway' granted to employers in the design of pension plans applies equally to their modification or amendment of those plans." *Id.* at 508. The Plan was amended in 2007 to include the venue selection clause at issue.[7]

Smith argues that the amendment was not the product of an arms-length transaction because the venue selection clause was added seven years after his benefits commenced. But the Supreme Court has recognized the validity of forum selection clauses even when those clauses were not the product of an arms-length transaction. *See Carnival Cruise Lines v. Shute*, 499 U.S. 585, 595 (1991) (enforcing a forum selection clause contained on the back of a cruise ticket). The logic supporting enforcement of such clauses applies equally to the venue selection clause here. And given the discretion available to plan administrators, we see no reason why this venue selection clause is invalid. The AEGON Pension Plan's venue selection clause is presumptively valid and enforceable. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) ("The correct approach would have been to enforce the forum clause specifically unless Zapata could clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching."); *F.D. Rich Co. v. Indus. Lumber Co.*, 417 U.S. 116, 125 (1974) (holding that a Miller Act requirement that suits be brought in specific federal courts was "merely a venue requirement" that could be waived).

Smith believes our holding could lead to an excessive burden on ERISA litigants were venue to lie only in Hawai'i or Alaska. That is not this case. And a party may always challenge the reasonableness of a forum selection clause. In *Wong*, 589 F.3d at 828, we provided a three-part test to use in evaluating the enforceability of a forum selection clause: "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." But as the district court noted, "Plaintiff has not argued that the clause was induced by

---

[7]A plan amendment by an employer does not disturb our conclusion in *Smith I* that only the Plan controls administration of the VERRP. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) ("[B]ecause [the] defined functions [in the definition of fiduciary] do not include plan design, an employer may decide to amend an employee benefit plan without being subject to fiduciary review." (internal quotation marks omitted)).

fraud, that the Cedar Rapids federal court would ineffectively or unfairly handle the case, or that the inconvenience to Plaintiff is unjust or unreasonable."

Smith argues in the alternative that the Plan document under which he retired should control his case because his pension claims accrued in 2000, and thus the venue selection amendment adopted in 2007 is inapplicable.  Smith alleges that although claims accrue when benefits are denied, claims also accrue when they are paid because each payment inherently repudiates a claim to additional benefits.  The Sixth Circuit, however, follows the "clear repudiation rule," under which a cause of action accrues "when a fiduciary gives a claimant clear and unequivocal repudiation of benefits." *Morrison v. Marsh & McLennan Cos.*, 439 F.3d 295, 302 (6th Cir. 2006).  Thus, Smith's claims did not accrue until 2011—after the venue selection clause was added—when the AEGON Pension Plan informed him that it was reducing his payments.  Smith cites to *Fallin v. Commonwealth Industries, Inc. Cash Balance Plan*, 521 F. Supp. 2d 592, 597 (W.D. Ky. 2007), in support of his argument that a cause of action also accrues when benefits are paid.  The problem for Smith is that he does not dispute the level of benefits he received from 2000–2011.  Smith might theoretically have a cause of action that accrued as early as 2000, but the claims he is raising here only relate to action taken in 2011.  Thus, the venue selection clause applies to Smith's claims.

IV.

We turn next to the question whether ERISA precludes venue selection clauses.  A majority of courts that have considered this question have upheld the validity of venue selection clauses in ERISA-governed plans.[8]  These courts reason that if Congress had wanted to prevent private parties from waiving ERISA's venue provision, Congress could have specifically

---

[8]*See Bernikow v. Xerox Corp. Long-Term Disability Income Plan*, CV 06-2612 RGKSHX, 2006 WL 2536590 (C.D. Cal. Aug. 29, 2006); *Gipson v. Wells Fargo & Co.*, 563 F. Supp. 2d 149 (D.D.C. 2008); *Klotz v. Xerox Corp.*, 519 F. Supp. 2d 430 (S.D.N.Y. 2007); *Rodriguez v. PepsiCo Long Term Disability Plan*, 716 F. Supp. 2d 855 (N.D. Cal. 2010); *Rogal v. Skilstaf, Inc.*, 446 F. Supp. 2d 334 (E.D. Pa. 2006); *Schoemann ex rel. Schoemann v. Excellus Health Plan, Inc.*, 447 F. Supp. 2d 1000 (D. Minn. 2006); *Smith v. Aegon USA, LLC*, 770 F. Supp. 2d 809 (W.D. Va. 2011); *Sneed v. Wellmark Blue Cross & Blue Shield of Iowa*, No. 1:07-CV-292, 2008 WL 1929985 (E.D. Tenn. Apr. 30, 2008); *Williams v. CIGNA Corp.*, No. 5:10-CV-00155, 2010 WL 5147257 (W.D. Ky. Dec. 13, 2010).  *But see Coleman v. Supervalu, Inc. Short Term Disability Program*, 920 F. Supp. 2d 901 (N.D. Ill. 2013); *Nicolas v. MCI Health & Welfare Plan No. 501*, 453 F. Supp. 2d 972 (E.D. Tex. 2006).

prohibited such action. *See, e.g., Bernikow v. Xerox Corp. Long-Term Disability Income Plan*, No. CV 06-2612 RGKSHX, 2006 WL 2536590, at \*2 (C.D. Cal. Aug. 29, 2006).

Smith argues that "Aegon is required to abide by ERISA where the terms of the Plan Conflict with ERISA." The Secretary and Smith point to a number of statutory provisions they think conflict with venue selection clauses. None of them does.

First, ERISA's policy is to provide "ready access to the Federal courts." 29 U.S.C. § 1001(b). Smith and the Secretary argue that this "Congressional policy behind ERISA cannot be ignored." But neither Smith nor the Secretary explains how a venue provision inhibits ready access to federal courts when it provides for venue in a federal court. *See Smith v. Aegon USA, LLC*, 770 F. Supp. 2d 809, 812 (W.D. Va. 2011) (holding that a contractual venue provision "certainly does not conflict with ERISA's provision for 'ready access to the federal courts.'" (citation omitted)). And other ERISA policies are furthered by venue selection clauses. For instance, "limiting claims to one federal district encourages uniformity in the decisions interpreting that plan, which furthers ERISA's goal of enabling employers to establish a uniform administrative scheme so that plans are not subject to different legal obligations in different States." *Rodriguez v. PepsiCo Long Term Disability Plan*, 716 F. Supp. 2d 855, 861 (N.D. Cal. 2010); *see also Klotz v. Xerox Corp.*, 519 F. Supp. 2d 430, 436 (S.D.N.Y. 2007) ("The forum selection clause contained in Xerox's LTD [Long Term Disability Income] Plan allows one federal court to oversee the administration of the LTD Plan and gain special familiarity with the LTD Plan Document, thereby furthering ERISA's goal of establishing a uniform administrative scheme."). The cost to employees of one plan's being subject to the varying pronouncements of federal district courts around the country would also undermine ERISA's goal of providing a low-cost administration of employee benefit plans. *See Scaglione v. Pepsi-Cola Metro. Bottling Co. Inc.*, 884 F. Supp. 2d 642, 643 (N.D. Ohio 2012) ("Forum selection clauses in ERISA plans promote ERISA's goal of uniformity of administration and reduce costs . . . .").

Second, Smith and the Secretary point to ERISA's venue provision, which provides:

> Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

29 U.S.C. § 1132.  ERISA's venue provision is permissive: suit "may be brought" in one of several districts.  AEGON's venue selection clause provides that suit is to be brought in one of these statutorily designated places, namely, the district where the plan is administered—Cedar Rapids, Iowa.  ERISA's venue provision does not conflict with AEGON's chosen venue.  *See Price v. PBG Hourly Pension Plan*, No. 12-15028, 2013 WL 1563573, at *2 (E.D. Mich. Apr. 15, 2013) ("The *may* of § 1132(e)(2) does not mean *cannot*. Congress provided that an action *may* be brought in several venues.  Congress did not provide that private parties *cannot* narrow the options to one of these venues."); *Williams v. CIGNA Corp.*, No. 5:10-CV-00155, 2010 WL 5147257, at *4 (W.D. Ky. Dec. 13, 2010) (concluding that Congress did not "intend to usurp the right of private parties to predetermine the situs of anticipated litigation under ERISA" because ERISA's venue selection provision is permissive).

But even if the venue selection clause laid venue outside of the three options provided by § 1132, the venue selection clause would still control.  We have previously upheld the validity of mandatory arbitration clauses in ERISA plans, *see Simon v. Pfizer Inc.*, 398 F.3d 765, 773 (6th Cir. 2005), which are, "in effect, a specialized kind of forum-selection clause," *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974).  It is illogical to say that, under ERISA, a plan may preclude venue in federal court entirely, but a plan may not channel venue to one particular federal court.  Smith tries to distinguish *Simon* by arguing that arbitration affects only forum, not venue.  But an arbitration clause may prescribe the geographic location of the proceedings as well as the forum.  *See Sneed v. Wellmark Blue Cross & Blue Shield of Iowa*, No. 1:07-CV-292, 2008 WL 1929985, at *2 (E.D. Tenn. Apr. 30, 2008) ("A forum selection clause merely requires the parties to submit their dispute to a different judge in a different courthouse who will use a substantially similar process to reach a decision.  An arbitration clause will prevent a litigant from submitting the dispute to a judge or formal court proceeding at all.  If arbitration clauses are enforceable the Court sees no reason to conclude forum selection clauses are not enforceable.").  Thus, ERISA's venue provision does not invalidate AEGON's venue selection clause.

Third, Smith raises two arguments regarding fiduciary duties under ERISA.  Smith argues that the venue selection clause violates 29 U.S.C. § 1110(a), which states, "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or

liability for any responsibility, obligation, or duty under this part shall be void as against public policy." But Smith did not raise this argument until his Federal Rule of Civil Procedure 59 motion to alter, vacate, or amend the district court's judgment, and he has waived it.[9] *See Am. Family Prepaid Legal Corp. v. Columbus Bar Ass'n*, 498 F.3d 328, 335 (6th Cir. 2007); *Am. Meat Inst. v. Pridgeon*, 724 F.2d 45, 47 (6th Cir. 1984).

Smith tries to distinguish his benefits claims from his breach of fiduciary duty claims, arguing that venue cannot be limited with regard to the latter, even if it can be for benefit claims. Smith did not raise this argument until his Rule 59 motion, and thus has waived it as well. Regardless, none of the statutory provisions Smith cites provides a reason not to apply the venue selection provision to both his fiduciary and benefits claims. The venue selection provision applies to *all* actions brought by a participant or beneficiary, not just claims for benefits.

V.

Finally, Smith contends that the district court impermissibly dismissed his claims rather than transferring them under 28 U.S.C. § 1404(a). We review for an abuse of discretion. *See First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 262 (6th Cir. 1998) ("The decision of whether to dismiss or transfer is within the district court's sound discretion, and accordingly, we review such a decision for an abuse of discretion."). Smith never sought transfer before the district court, though the Secretary argued in an amicus brief at the motion to dismiss stage that "the appropriate remedy is not dismissal, but transfer." In an additional citation filed with this Court after briefing, Smith points to the Supreme Court's recent decision in *Atlantic Marine Construction Co. v. U.S. District Court for the Western District of Texas*, 134 S. Ct. 568 (2013),

---

[9]Even absent waiver, this argument would fail. 29 U.S.C. § 1110(a) refers to responsibilities, obligations, and duties "under this part," which is Part 4 of ERISA. AEGON's venue selection clause appears in Part 5, not Part 4. *See* § 1132(e)(2). Furthermore, a forum or venue selection clause does not attempt to free a fiduciary from its substantive obligations under ERISA. *See Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc.*, 847 F.2d 475, 478 (8th Cir. 1988) ("Section 1132(e), unlike sections in part 4 of subtitle B of the statute, does not impose any substantive duties or liabilities on ERISA fiduciaries."). Both the Supreme Court and our Court have held that forum selection clauses do not waive substantive rights. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985) ("We must assume that if Congress intended the substantive protection afforded by a given statute to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history."); *Roney & Co. v. Goren*, 875 F.2d 1218, 1221 (6th Cir. 1989) ("We are unable to discern how an agreement limiting a customer to one [particular arbitration entity] would constitute a waiver of any substantive rights under the [Securities] Exchange Act.").

as support for his argument on appeal that transfer is the proper remedy.  The *Atlantic Marine* Court stated:

> The question in this case concerns the procedure that is available . . . to enforce a forum-selection clause.  We reject petitioner's argument that such a clause may be enforced by a motion to dismiss under 28 U.S.C. § 1406(a) or Rule 12(b)(3) of the Federal Rules of Civil Procedure.  Instead, a forum-selection clause may be enforced by a motion to transfer under § 1404(a).

*Id.* at 575.  Noting that the defendant had not filed a motion to dismiss under Rule 12(b)(6), and further noting the specific differences between Rule 12(b)(6) and § 1404(a), the Court declined to apply its holding to Rule 12(b)(6) dismissals.  *See id.* at 580.  In our case, Smith's complaint was dismissed pursuant to Rule 12(b)(6), not Rule 12(b)(3).  The district court did not abuse its discretion in dismissing the case instead of transferring it.

## VI.

For the foregoing reasons, we AFFIRM the judgment of the district court.

_____

**DISSENT**

_____

CLAY, Circuit Judge, dissenting.   The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, was designed to provide "ready access to the Federal courts" so as "to protect . . . the interests of participants in employee benefit plans and their beneficiaries." § 1001(b).   In enacting ERISA, Congress expressly sought to eliminate "jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities."   H.R. REP. NO. 93-553, at 17 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4655.   Consistent with the congressional goal of removing jurisdictional barriers that would prevent plan participants and their beneficiaries from asserting their statutory rights, ERISA § 502(e)(2) provides broad jurisdiction for benefit claims:

> Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where the defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

29 U.S.C. § 1132(e)(2).   The preclusive venue selection clause that the AEGON Companies Pension Plan ("the Plan") unilaterally added in 2007 is inconsistent with the purpose, policy, and text of ERISA, and contravenes the "strong public policy" declared by ERISA; therefore, the clause should be deemed unenforceable. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972).   Because the United States District Court for the Western District of Kentucky is a proper venue for Plaintiff's ERISA pension benefits claims pursuant to § 502(e), 29 U.S.C. § 1132(e), and because the venue selection clause should be deemed unenforceable, I respectfully dissent.

The venue selection clause that the Plan seeks to enforce forbids Plaintiff from bringing a suit for benefits anywhere other than Cedar Rapids, Iowa—a venue that is located more than 500 miles away from Plaintiff's home and place of work, and with which Plaintiff has no connection.   Such a restrictive clause not only conflicts with the broad venue provision set forth in § 502(e) of ERISA, but also undermines the very purpose of ERISA and contravenes the

strong public policy evinced by the statute. Section 502(e), which provides broad jurisdiction for benefit claims, is "intended to grant an affirmative right" to ERISA participants and beneficiaries. *Coleman v. Supervalu, Inc. Short Term Disability Program*, 920 F. Supp. 2d 901, 906 (N.D. Ill. 2013) (holding that a forum selection clause in an ERISA plan was unreasonable as contrary to public policy and unenforceable). This right is indispensable for many of those individuals whose rights ERISA seeks to protect, since claimants in suits for plan benefits— retirees on a limited budget, sick or disabled workers, widows and other dependents—are often the most vulnerable individuals in our society, and are the least likely to have the financial or other wherewithal to litigate in a distant venue. *See French v. Dade Behring Life Ins. Plan*, No. 09-394-C-M2, 2010 WL 2360457, at *3 (M.D. La. Mar. 23, 2010). A venue selection clause that purports to eliminate proper statutory venues conflicts with ERISA's venue provision as well as the strong statutory public policy against imposing obstacles to beneficiaries in pursuit of benefit claims.

ERISA's policies and provisions supersede the general judicial policy of enforcing "contractual choice-of-forum" clauses, which the Supreme Court has cautioned "should be held unenforceable if enforcement would contravene a strong public policy," including a policy "declared by statute." *Bremen*, 407 U.S. at 15. The statutory text and legislative history of ERISA clearly demonstrate that Congress desires open access to several venues for beneficiaries seeking to enforce their rights. *See, e.g.*, 29 U.S.C. § 1001(b) (declaring that it is the policy of ERISA "to protect . . . the interests of participants in employee benefit plans and their beneficiaries . . . by providing for . . . ready access to the Federal courts."); H.R. REP. NO. 93-553, at 17 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4655 (explaining that Congress intended ERISA's enforcement provisions "to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities."). As the district court recognized in *Coleman*, "an employer's unilateral restriction of that access would undermine Congress' stated desire." *Coleman*, 920 F. Supp. 2d at 908. This is especially true where, as here, the restrictive venue selection clause was unilaterally added to the Plan seven years after Plaintiff agreed to its terms. These circumstances compel the conclusion that the venue selection clause is unreasonable, inasmuch as it contravenes the strong and clearly stated public policies of ERISA.

The majority relies upon a decision from this Court enforcing an arbitration agreement in the context of an ERISA benefit claim, and reasons that it is "illogical" to conclude that a plan may mandate arbitration, but may not restrict venue to a specific geographic location. Majority Op. at 12. In so concluding, the majority overlooks the important distinctions between the arbitration agreement at issue in *Simon v. Pfizer Inc.*, 398 F.3d 765 (6th Cir. 2005), and the venue selection clause at issue in the present case. We enforce arbitration agreements with regard to federal statutory claims not based on some general policy favoring forum selection clauses, but because that is what the Federal Arbitration Act, 9 U.S.C. §§ 2, 3, requires. *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (holding that an arbitration clause was enforceable under the Federal Arbitration Act with respect to a claim under the Securities Exchange Act of 1934). Though the majority opinion states otherwise, *see* Majority Op. at 12, this Court has never held that an arbitration clause may prescribe the geographic location of the proceedings as well as the forum. The majority's conclusion that an arbitration clause may prescribe the geographic location of the proceedings does not appear in, or naturally flow from, our opinion in *Simon*, and does not appear elsewhere in our case law. Arbitration provides an alternative decisionmaker, but does not necessarily require a claimant to travel to a distant venue to pursue a claim for benefits. The distinction between arbitration provisions and venue selection clauses is not, in the words of the majority, "illogical;" upon closer inspection, such a distinction can be rather easily reconciled.

Requiring Plaintiff to litigate in a distant venue imposes a substantial increase in expense and inconvenience that obstructs his access to federal courts. Because the express purpose and policy of ERISA is to provide unobstructed access to a forum in which participants and beneficiaries can pursue their claims for benefits, the unilaterally added venue selection clause at issue in this case should be deemed unenforceable, and the Plan's motion to dismiss for improper venue should be denied.

I therefore respectfully dissent.